## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:20-CR-00047 |
| v. | (MARIANI, J.)<br>(SAPORITO, M.J.) |
| ALMALIK WASHINGTON, | |
| Defendant. | |

## <u>MEMORANDUM</u>

This matter is before the court on the motion for pretrial release arising from health risks associated with COVID-19 (Doc. 20) filed by the defendant, Almalik Washington.

On February 25, 2020, Washington was charged in an indictment with unlawful possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1); possession of a firearm with an altered serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B); and possession of marijuana, in violation of 21 U.S.C. § 844(a). The indictment also contained a forfeiture allegation. (Doc. 1). On February 27, 2020, he appeared before the undersigned United States magistrate judge for an initial appearance and an arraignment. He entered a plea of not guilty to the charges in the indictment. He returned on March 3,

2020, for a detention hearing. After the hearing, we ordered that Washington be detained pending trial, and he has been in custody since. (Doc. 16).

Washington now asks that we reconsider our order for two reasons: (1) the risk of being confined in a large group during the COVID-19 global pandemic, which places him at substantial risk because he is asthmatic; and (2) an audio recording on the day of transport to court for his initial appearance and arraignment, which he asserts is new evidence, demonstrates that he is not a flight risk. In his motion, Washington attached a certificate of non-concurrence (Doc. 20-1) certifying that the assigned assistant United States attorney does not concur in his motion. Washington filed a brief in support of his motion (Doc. 20), and his counsel filed a notice which states that the issue of release was not resolved and that a hearing is requested. (Doc. 22). The government has filed a brief in opposition to the defendant's motion (Doc. 25). The motion is ripe for a decision.

## I.     *Statement of Facts*

If convicted of the charges contained in the indictment, Washington faces a maximum term of life in prison, with a mandatory minimum

sentence of fifteen years imprisonment. At the detention hearing held on March 3, 2020, the government proffered that, on December 2, 2019, because of a vehicle stop, the Pennsylvania State Police investigated Washington and found him to be in possession of a firearm. Having been previously convicted of disqualifying felonies multiple times, he was arrested and charged by state police with illegal possession of a firearm. The same facts underlying this arrest gave rise to a three-count federal indictment, returned by a grand jury of the Middle District of Pennsylvania on February 25, 2020.

Apparently, Washington was apprehended on the federal indictment when he returned to Pennsylvania from New Jersey for a state court hearing. At the March 3, 2020, detention hearing, the government further proffered that, at the time of his arrest and transportation by federal law enforcement authorities, Washington stated that he was regretful for returning to Pennsylvania to appear at the state court hearing, rather than remaining in New Jersey, because he believed law enforcement would not have been able to locate him if he had stayed there. We found that, after considering the factors set forth in 18 U.S.C. § 3142(g) and the information provided at the detention

hearing, the government proved by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. We also found that the government proved by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required. (Doc. 16). Therefore, his detention was ordered.

In addition to the findings made on the record at the hearing, the reasons for detention included the following: his prior criminal history; his lack of significant community or family ties to this district; and, based upon the government's proffer, we expressed our concern about his statement to the arresting officer at the time of his arrest on federal charges that there are places in New Jersey where he would not be able to be found.

In his motion for review of detention order, Washington notes that our prior decision was based, in part, on his alleged statement made to the arresting officer. While it is true that we were not inclined to release Washington based in part upon his alleged statement, other considerations aided in our decision that led to his detention. For

example, Washington's involvement in criminal activity dates to 2001 when he was 15 years old. He was arrested on September 9, 2001, and charged with robbery in the Union County Juvenile Court in Linden, New Jersey. That conduct began a spree of criminal conduct in Elizabeth, New Jersey, where he was charged and convicted of: manufacture, distribution, or possession with intent to deliver heroin in 2004; manufacture or distribution of a controlled substance in 2005; controlled dangerous substance on school property in 2009; resisting arrest in 2009; and aggravated assault which caused bodily injury in 2015. We also found significant the recommendation of detention by the United States Probation Office.

Further, Washington seeks reconsideration of our order of detention, if only temporarily, due to the risks associated with being confined in a large group during the COVID-19 global pandemic because of his history of asthma.

We granted Washington's request for a hearing on the motion which we conducted telephonically, with his consent, on April 20, 2020. At the hearing, Lataiyyah Washington, the defendant's sister, and Shakia Smith, who is pregnant with the defendant's child, testified that

they are willing to be designated as third-party custodians. Prior to the hearing, Washington provided the court with a recording of the alleged statement made to law enforcement during his transport to this court, arguing that it was made in the context of "mutually teasing banter" with the arresting officer. For the reasons discussed herein, we will deny Washington's motion.

## II.   Discussion

### a. COVID-19 Global Pandemic

We are mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.[1] "COVID-19 is the infectious disease caused by the novel coronavirus." *United States v. Roeder*, ___ Fed. App'x ___, 2020 WL 1545872, at *1 (3d. Cir. Apr. 1, 2020) (per curiam). We are also cognizant that the President of the United States has declared a national emergency and the Governor of Pennsylvania has declared a state of emergency and issued a stay-at-home order through April 30, 2020, which has been extended to May 8, 2020. Further, the Governor has ordered all schools to remain closed for

---

[1] World Health Org., *WHO Characterizes COVID-19 as a Pandemic* (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen.

the remainder of the 2019–2020 academic school year. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash and/or sanitize frequently, and to avoid close contact with others—all of which present challenges in detention facilities. *See Roeder*, 2020 WL 1545872, at *2; *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020).

### b. Conditions of LCP

Washington alleges that LCP inmates report a scarcity of soap and cleaning supplies, and that hand sanitizer is unavailable. He also alleges that the medical services at LCP are inadequate given that Washington is an asthmatic. Further, he asserts that LCP lacks the resources necessary to engage in screening and testing of inmates, correctional staff, law enforcement officers, and other care and service providers who enter the facility. He also maintains that, as additional people are arrested who have been out in the community as the coronavirus spreads and are brought to the LCP, they will be held with the existing population unless they are found to be symptomatic. As a consequence, Washington contends that it is difficult or impossible for those inmates most at risk

7

to engage in social distancing and self-quarantine precautions as recommended by the Centers for Disease Control and Prevention. Lawyer visits have been limited to meetings through glass making the preparation of a defense difficult, and potentially impossible. He also alleges that the prison telephones, which are the sole form of communication with counsel and family, are not sanitized between each use by individual inmates.

In its brief in opposition, the government concedes a recent disclosure that a guard at LCP recently tested positive for the COVID-19 virus, which resulted in inmates being placed in lockdown, permitted only to leave their cells for showers, phone calls, attorney visits (through glass windows), and video teleconferencing for court proceedings. (Doc. 25, at 8). The government proffers in its brief that LCP has reported no other staff member or inmate has reported flu-like symptoms. (*Id*.). At the April 20, 2020, hearing, the government proffered that as of that date, no other inmate or corrections officer at LCP have tested positive for the coronavirus. We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison. *See Shakur v. Costello*, 230 Fed. App'x 199, 201 (3d

Cir. 2007) (per curiam) (taking judicial notice of county prison procedures). Under these new policies and procedures, LCP has suspended contact visits, regular visitation, and visitation from volunteers, including religious leaders. It has implemented aggressive sanitation programs and suspended all programs that utilize "outside" employees. It has prohibited individuals other than prison and medical staff to proceed any further than the reception area. It has limited attorney visits with inmates to meetings through a glass partition in a lawyer visitation room unless written permission is granted by the warden or the deputy warden. It has cancelled all conferences and out-of-county training. It has provided for weekly contact with officials from the state department of corrections. It has posted educational flyers in the blocks and in the reception area. It has also implemented body temperature screening checks for all employees and lawyers as they enter the facility. *United States v. Mendoza*, No. 5:20-mj-00011, 2020 WL 1663361, at *3 & n.4 (M.D. Pa. Apr. 3, 2020).

### c. 18 U.S.C. § 3142(f)(2)—Reconsideration of detention orders

Washington seeks release because of the existence of COVID-19, the alleged adverse conditions of LCP, and his increased risk of exposure

to COVID-19 because he suffers from asthma. The existence of COVID-19 and its increase of risk to individuals with asthma were not known to Washington at the time of his earlier detention hearings. The Bail Reform Act provides that a defendant who is detained pending trial may move the court to reconsider its detention order if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that it has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of any other person and the community. 18 U.S.C. § 3142(f)(2).

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the original detention hearing, we concluded that Washington be detained pending trial because the government proved by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person or the community. In addition to the findings made on the record at the hearing, the reasons for detention included the following: his prior criminal history; his lack of significant community or family ties to this district; and our concern, based upon the government's

proffer, that the defendant stated to the arresting officer at the time of his arrest that there were places in New Jersey where he could not be found. Therefore, his detention was ordered. (Doc. 26).

In his brief in support of the instant motion, Washington argues that he is in a high-risk category because he suffers from asthma. (Doc. 21, at 3). That circumstance does not change despite the existence of the coronavirus pandemic. At best, Washington presents only speculative arguments that his confinement in the LCP increases the health risks posed by COVID-19.

At the hearing on April 20, 2020, Washington, age 33, testified that he has been an asthmatic since childhood. He did not refer to any instance during his stay at LCP where he was hospitalized, nor had the need to use a nebulizer or an inhaler. If released, Washington stated that he would live either with his sister, in Elizabeth, New Jersey, or with the expectant mother of his unborn child in Irvington, New Jersey. He testified that he is willing to abide by all conditions of release, including house arrest, and he is willing to look for work.

We did listen carefully to the audio recording supplied to us by defense counsel. While we do agree that Washington's statements about

not being able to be found in New Jersey appear to have been stated in a kidding manner, the law enforcement officer who engaged in conversation with Washington in route to the United States Courthouse in Wilkes-Barre, Pennsylvania, made remarks that Washington cooperated in his apprehension. Further, he told Washington in the recording that his cooperation would be made known to the court. At the hearing, the government's proffer did not contain that dialogue. We are unable to determine whether the officer was engaged in friendly discussion with Washington to encourage him to speak to obtain an admission. The dialogue presented to us for consideration does not persuade us to modify the detention order.

Washington's motion is found wanting for several reasons. Other than a single guard who appears to have had no contact with the movant, there have been no confirmed cases of COVID-19 in the LCP. Moreover, LCP has implemented new policies and procedures to protect its population as referenced above. There is no evidence that such measures are, or have been, inadequate. Our court has temporarily continued all court proceedings through May 31, 2020, which should ameliorate a criminal defendant's concerns about assisting his or her attorney in the

preparation of a defense. Further, we are confident that LCP will respect the privileged nature of the communications between attorneys and their inmate-clients, as nothing to the contrary has been alleged or otherwise brought to our attention. Finally, despite Washington's testimony that if released he will abide by all conditions of release, his past conduct guides us on his potential future conduct. We incorporate our discussion above regarding Washington's extensive prior criminal record.

In the absence of any evidence that LCP is not providing—or is unable to provide—appropriate medical care, we are not persuaded that Washington should be released. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (recognizing that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"). Accordingly, we are not persuaded to reconsider our order of detention.

### d. 18 U.S.C. § 3142(i)—Temporary Release

In his brief, Washington seeks relief under 18 U.S.C. § 3142(i) which allows a judicial officer, by subsequent order, to permit the

13

temporary release of a person to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or another compelling reason. He cites the same reasons above in support of his position that the global pandemic and his heightened health risks constitute "another compelling reason" to justify his release.

Section 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply the proper legal standards that govern an individual's particular request for relief. *Roeder*, 2020 WL 1545872, at *3.

Until recent events spawned by the COVID-19 global pandemic, defendants seeking release under § 3142(i) generally did so because it was necessary to prepare the person's defense. Those courts finding "another compelling reason," however, typically granted release

"sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Lee*, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS, which could no longer be managed by correctional authorities); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshals Service refused to take custody of him until his wounds closed).

A defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan., Mar. 25, 2020). We must make an individualized determination as to whether COVID-19 concerns are compelling in a particular case to justify

temporary release under § 3142(i). *Id.* A decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*Id.*

We incorporate our analysis above under § 3142(f)(2) to arrive at the same conclusion here. The defendant's release plan, which includes either his sister or the expectant mother of his unborn child to act as third-party custodians, does not appear to mitigate or exacerbate other COVID-19 risks to Washington or to others. We are uncomfortable, however, with allowing the defendant to reside in the same household with a minor child or children who are not his own. Despite their

willingness to serve as third-party custodians and their intended good faith efforts, we are not satisfied that either of the proposed living arrangements is in the proposed third-party custodians' best interest or the best interests of their minor children. Nor are we persuaded that the defendant's proposed release would not increase COVID-19 risks to others—both to the several members of the two households into which it is proposed the defendant be released, and to the surrounding community. As the government contends, both counties (Union and Essex) have had a multitude of deaths resulting from COVID-19.

While the court remains sympathetic to Washington's concerns regarding the possibility of health complications caused by the COVID-19 virus, "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, No. 20-51, 2020 WL 1501859, at *3 (W.D. Pa. Mar. 30, 2020); *see also United States v. Pritchett*, No. CR 19-280, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (despite being sympathetic to defendant's medical conditions, including a diagnosis of asthma, speculation concerning possible future conditions in jail does not constitute a "compelling reason" for temporary release.); *United States v. Jones*, No. 2:19-CR-00249-DWA, 2020 WL 1511221, at

*3 (W.D. Pa. Mar. 29, 2020) (holding that, while the defendant suffered from hypertension, sleep apnea, and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions were not sufficient to establish a compelling reason for release in light of the danger to the community posed by his release and the efforts undertaken at the jail to combat the spread of the virus) (citing *United States v. Davis,* 2020 U.S. App. LEXIS 9987 (3d Cir. Mar. 20, 2020)). The state of the record reflects that the defendant's asthma related issues seem to be under control.

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Williams*, No. PWG-19-8, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying defendant's motion even where at least five inmates had tested positive for COVID-19 and defendant suffered from allergies and asthma); *United States v. Bilbrough*, No. TDC-20-0033, 2020 WL 1694362 (D. Md. Apr. 7, 2020) (affirming magistrate judge's denial of motion by defendant who suffered from diabetes); *United States v. Julius Williams*, No. PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020) (denying a 67-year-old defendant's motion); *United States v. Penaloza*,

No. TDC 19-238, 2020 WL 1555064 (D. Md. Apr. 1, 2020) (denying motion of defendant who suffered from a heart murmur); *United States v. Jefferson*, No. CCB-19-487, 2020 WL 1332011 (D. Md. Mar. 23, 2020) (denying motion of asthmatic defendant). Thus, we are left to speculate whether Washington's continued incarceration would likely increase his risk of harm. However, mindful of the rapidly evolving conditions in prisons throughout the nation as well as the COVID-19 pandemic, we will entertain a renewed request for release if at some point in the future it becomes clear that there are compelling reasons to justify the defendant's release. *United States v. Sanchez*, No. 1:19-cr-00152, 2020 WL 1814159 *7 (M.D. Pa. Apr. 9, 2020) (citing *United States v. Lee*, No 19-CR-298 (KBJ), 2020 1541049, at *7 (D.D.C. Mar. 30, 2020)).

## III.   *Conclusion*

For all the reasons set forth above, Washington has failed to demonstrate a compelling reason under 18 U.S.C. §§ 3142(f)(2) and (i) for reconsideration of the Court's prior order of detention. Therefore, his motion is denied.

An appropriate order follows.

**_s/Joseph F. Saporito, Jr._**
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: May 4, 2020